UNITED STATES DISTRICT COURT        20-cv-864 SRN/LIB
DISTRICT OF MINNESOTA

Thomas Evenstad,
    Plaintiff,

v.

Paul Schnell, Michelle Smith,
Nate Knutson, Karen Robinson,           COMPLAINT
Tracy Hosking, Vicki Janssen, Deneen Clemons,
Minnesota Department of Corrections,    JURY TRIAL
State of Minnesota,                     DEMANDED
        Defendants.

RECEIVED BY MAIL
APR 1 2020
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

RECEIVED BY MAIL
MAR 20 2020
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

SCANNED
APR 01 2020
kos
U.S. DISTRICT COURT ST. PAUL

## INTRODUCTION

Plaintiff Thomas Evenstad (herein "Evenstad")
brings this lawsuit against Defendants, who are
Minnesota Department of Corrections officials/Administrators
for violating Evenstad's right to redress government
with grievances under the First Amendment of the
United States Constitution; First Amendment retaliation;
Violations of Evenstad's Due Process rights under the
Fifth and Fourteenth Amendments of the U.S. Constitution;
Violations of Evenstad's access to courts and Equal
Protection. Evenstad sues all defendants in their official
as well as individual capacities, and sues the MN Dep't of
Corrections and the State of Minnesota under MONELL Liability.

    Evenstad seeks Preliminary Injunctions prohibiting
the Minnesota Department of Corrections (herein "Doc")
and/or MCF-Rush City (herein "RC") officials from
charging him or disciplining him for engaging in
First Amendment protected speech/actions, specifically
for writing to DOC Central Office (herein "CO")
or requesting DOC Personnel Files or other
Public Data, such as RC staffing/overtime data at issue.
Evenstad's PI does not include non-public, confidential
and/or personal information subject to appropriate redaction(s).

This lawsuit is of public concern as it demonstrates the DOC's belief shown in their actions that they are above the law, and that since no one, including the Courts, will hold them accountable, they can do as they please regardless of the effects on staff and/or prisoners. This mindset is what murdered Joe Gomm.

The DOC's wanton disregard for compliance with their own policies as well as the law, has created a safety and security crisis in our State's prisons. The DOC has created, condoned, and enabled an environment of violence in which two high-profile deaths of Correctional Officers have been allowed to occur, which were both 100% predictable, and in fact preventable. Evenstad himself in 2017 urged the DOC Commissioner to cease the use of dangerous weapons in the MCF-Stillwater's FOR-PROFIT Slave Labor Industry (Minncor), but as always over 22 years, Evenstad's suggestion fell on deaf ears.

The DOC's utter incompetence, negligence and arrogance is responsible for the chaos, lawlessness and dysfunction the OLA report lays bare. Evenstad has proposed, via a March 5, 2020 letter to Governor Tim Walz the creation of a Prison Safety Task Force Evenstad, with his unique experience of 40+ years of correctional experience in 8-hour shifts at/in all 7 adult prisons, has volunteered to provide leadership on if Appointed.

Prisoners cannot reasonably be expected to follow rules when those in authority over them don't follow rules. The DOC is not "Contributing to a Safer Minnesota" as it's motto falsely alleges, but rather, through mismanagement and a total lack of leadership and judicial oversight is contributing to a more dangerous State as the OLA report shows.

-2-

In this lawsuit, both the Courts and the Public
will see how the DOC violates prisoners' rights
and specifically Evenstad's rights, and
then attempts to insulate itself from judicial
oversight by foreclosing/preventing Evenstad's
ability to exhaust administrative remedy —
a prerequisite to litigation — only to then assert
an "affirmative defense" in which the DOC
alleges Evenstad failed to exhaust administrative
remedy. The DOC routinely engages in this
conduct as a pre-planned/premeditated legal
strategy to evade liability and to protect
them from judicial oversight/scrutiny. Evenstad
has every confidence this Court will see
through this DOC Custom/Practice. In this action.
Evenstad asserts he has acted in good faith and
has made a good faith effort to exhaust administrative
remedy, only to be threatened with retaliation via
disciplinary adverse actions if he contacts CO.

## FACTS

1. On January 26, 2020, Evenstad wrote to CO to DOC
Commissioner/Defendant Paul Schnell (requesting DOC om-
budsman Mark Haase be copied) requesting transfer
to a medium custody/security prison as Evenstad
has been classified as medium since December, 2019. See Exh. 1

2. Under the Equal Protection Clause of the U.S. Constitution,
Evenstad has the right to be transferred to a medium
prison or provided similar out of cell time and
recreational opportunities as similarly situated medium
security prisoners who are physically residing in Mediums.

3. Evenstad is locked up in his cell 22 hours per day and
often 23 hours per day due to recreation cancellations.

-3-

3. At Medium prisons, prisoners such as Evenstad who are not in administrative or disciplinary segregation are allowed to be out of their cells for six-plus hours per day on weekdays, and all day until lockdown – approximately 14-15 hours – on weekends and are offered significantly more recreation (yard/gym) opportunities vs RC.

4. Evenstad exhausted facility chain-of-command at RC requesting transfer or similar privileges as Medium. Every request from the Unit Lieutenant through the Warden was denied/refused prior to Evenstad writing the Commissioner seeking relief. Evenstad wrote to "Capacity Management" (Transfer Coordinator) Tracy Hosking prior to Commissioner Schnell seeking transfer to Medium. Defendant Hosking denied Evenstad's request, violating his right to Equal Protection.

5. Evenstad informed Defendants Hosking and Schnell that RC Administration had reclassified Evenstad to Medium from Close, finding Evenstad "... is most likely better suited at a medium facility" and that "... the discipline he received at FRB that elevated his classification was likely not appropriate." See Exh. 6

6. In other words, despite determining that 54 year old Evenstad, who suffers from PTSD due to chronic state-induced trauma, is better suited at a medium and that the false, retaliatory discipline Evenstad was subjected to in June, 2019 which resulted in Evenstad being transferred to more dangerous prisons at Stillwater and Rush City was inappropriate, RC and DOC Defendants Schnell, Smith, Knutson, Hosking, Janssen and Clemons left Evenstad to suffer at RC. Nearly 1/3 of RC's prisoners are convicted of homicide. RC/DOC has demonstrated Deliberate Indifference and Recklessly Endangered Evenstad.

-4-

7.   This Court should note, that of importance
to Evenstad's Equal Protection, Deliberate Indifference
and Reckless Endangerment claims with respect
to the issue of medium transfer/privileges,
that DOC prisoners at Mediums who are
convicted of "Risk Codes" are removed from
the general population for prisoner and especially
staff safety and never are allowed to
set foot in a Medium again they are reclassed
to medium from Close Custody.

8.   When prisoners in Close Custody reclass to
medium for extended period of model behavior,
they are not removed from the general population
for their safety and the DOC refuses to segregate
medium prisoners in separate units or wings
of their Close Custody prisons as Evenstad requested.
Evenstad submits the DOC cannot have it both ways.

9.   If Close prisoners pose such a dire threat to
Medium staff and prisoners, then medium
prisoners must be kept separate/segregated
within Close prisons from close prisoners
and provided similar out of cell time and
recreational opportunities as medium facilities.

10.   In Evenstad's 1-26-2020 letter to Comm-
issioner Schnell, Evenstad informed Defendants
Schnell, Smith and Knutson that RC officials,
including Defendant Janssen were violating DOC
Policy and Evenstad's constitutional rights by
falling/refusing to place Evenstad on Medical
Placement. See Exh.1

11.   Evenstad's medical records at RC contain
multiple "Medical Opinion Forms" in which Evenstad
has been determined to be medically unable to
work in any capacity permanently. See i.e. Exh. 7.

-5-

12.    RC officials refuse to comply with DOC Policy that entitles Evenstad to Medical Placement, which in turn, entitles Evenstad to be reclassified from Unemployed Idle (UI) to Medical Placement (MP). The difference in these status' is being locked up 22+hours per day, seven days per week on UI, vs being treated as a worker and allowed several additom hours out of cell daily and increased recreational opportunities.

13.    Evenstad's physical and mental health has been destroyed by the abusive, negligent conduct of denying Evenstad transfer to Medium and denial of MP, causing significant & atypical hardship to Evenstad, exacerbating his anxiety, PTSD, depression for no legitimate penological reason.

14.    Evenstad is scheduled for release to the community on April 27, 2020. Evenstad asserts that while he personally presents zero threat to public safety, the DOC's custom/practice of denying transfers to safer prisons where prisoners are allowed out of their cells more than one to two hours per day and offered more recreation as well as denying mentally ill prisoners, who are disabled as Evenstad is Medical Placement is placing the general public at higher risk than would be the case if DOC followed their own policies and respected prisoners' rights.

15.    Evenstad specifically asserts here the denial of transfer to medium and denial of medical placement has caused intense mental anguish and psychological duress/harm and his substantially damaged Evenstad's mental and physical health. The DOC is intentionally increasing Evenstad's

-6-

likelihood of failing on parole — the antithesis of DOC's stated mission: Reducing recidivism.

16. On February 5, 2020 Defendant Janssen sent Evenstad a memo threatening Evenstad with "disciplinary action" should Evenstad continue to exercise his First Amendment right to contact CO by mail marked "Special Mail" in compliance with DOC Policy. See Exhibits 2, 3.

17. Defendant Knutson is referenced as asking Janssen to respond on his behalf and is copied. Defendant Hosking is the Transfer Coordinator who refused Evenstad's written request for transfer to Medium. Defendant Smith is above RC administrators, defendant Hosking and defendant Knutson in DOC's chain-of-command, and is thus responsible for their violations of policies and rights as is her direct superior — Defendant Paul Schnell.

18. Defendants Hosking, Knutson, Smith, Schnell and Janssen's intent in threatening Evenstad with retaliatory punitive action for exercising his protected First Amendment right to redress government with grievances was to chill Evenstad from continuing to seek redress of grievances. This is the definition of First Amendment retaliation.

19. On March 9, 2020, Evenstad sent a "kite" (written communique) to Defendant Clemons — RC Data Compliance Official — requesting public data per MN Ch. 13, Data Practices Act regarding RC staffing, including overtime data/records. See Exh. 4

20. Evenstad sought the data for litigation purposes against the DOC, presentations to the Legislature, and for the Prison Safety Task Force Evenstad wrote Governor Walz on March 5, 2020 recommending he create to address prison safety.

— 7 —

21. Evenstad sues defendants Clemons, Jonssen, Robinson, Knutson, Smith and Schnell for* violating *First Amendment Retaliation DOC policy and State law in denying his Ch. 13 request and for denying him any/all "Personnel information on any staff." See Exh. 5

22. Defendant Clemons sent Evenstad cc memo dated March 13, 2020 threatening Evenstad with disciplinary action - Disobeying a Direct Order - should Evenstad request public data. Evenstad is entitled to this data per DOC policy and per State law. See Exh. 5

23. This Memo states Evenstad "... may NOT receive personnel information on any staff. I am giving you this directive to stop asking for ... See such information. Copy: Lt. G. Peterson, Discipline. Exh. 5 This Memo threatens Evenstad with disciplinary action - an adverse action - for the allowable exercise of Evenstad's First Amendment right to seek public data - textbook First Amendment retaliation. This Memo was designed to chill a person of ordinary firmness from continuing to exercise First Amendment rights. Unfortunately for the DOC, Evenstad is not a person of ordinary firmness - Praise Be To God & Lord Jesus!

24. The data Evenstad sought/seeks is not only relevant to Evenstad's work on prison reform, but also highly relevant to Evenstad's and other prisoner's ~~to her any~~ safety, staff safety and mental and physical health of all RCI SHU residents such as Evenstad locked up 22 hrs/day.

25. The State's OLA report "Safety in State Correctional Facilities" February, 2020 Evaluation (herein "OLA") discusses the issues of staffing at great length, especially in Ch. 3 "Staff Management."

26. Examples of staff shortages jeopardizing prisoner safety include: Inability to effectively monitor

-8-

prisoners to ensure they do not enter prohibited areas, especially other prisoner's cells as happened to Evenstad three days ago and increased tensions among prisoners caused by more frequent con- finement to cells, which Evenstad has been subject to 22 or 23 hrs/day since June ~~26~~ 26, 2019, and since November 8, 2019 at RC.

27. Use of overtime has decreased safety in prisons. OCA at 39. "Officers who are tired may be less alert and more likely to miss warning signs of impending trouble or attempts to smuggle contraband. Staff told us they do not have confidence that tired officers will be able to effectively support their coworkers in an emergency situation. Further, officers working overtime shifts can be more short-tempered than they would be otherwise, making them more likely to unnecessarily create or escalate conflicts. Constant overtime use can also effect safety indirectly by affecting employee stress levels, mental health, and morale." OCA at 39. All these issues affect Evenstad.

28. Defendants Schnell, Smith, Knutson, Hosking, Janssen and Clemons have demonstrated deliberate indifference to Evenstad's safety and have recklessly endangered Evenstad by refusing to transfer him to a safer, lower custody/security prison despite determination Evenstad is better suited at a medium and never should have been transferred to close custody/security in the first place. RC's prisoners have nearly 1/3 in for homicide and Evenstad's life & safety placed in danger unnecesarily for no legitimate penological purpose.

29. RC's custom/practice of cancelling recreation for SHU residents like Evenstad while not cancelling the For-Profit Prison Industry Slave Labor Mincor has

-9-

substantially and adversely affected Everstad's
mental and physical health and recklessly
endangered his safety. Prison staff ranked
denial of recreation as a more serious safety
issue than denials of work, school/education and
behavioral/mental health treatment. DCA at 51.

30. Everstad sues Defendant Robinson for all policy
and law violations cited in this lawsuit as
Defendant Robinson is the DOC's Policy and
Legal Director. Everstad submits Exhibits 8-46
in advance of his 1st Amended Complaint he seeks Representation for.

## CLAIMS

I.  First Amendment Retaliation
II.  First Amendment Violations
III.  Due Process Violations, including Access To Courts
IV.  Deliberate Indifference
V.  Reckless Endangerment
VI  Cruel and Unusual Punishment
VII  Equal Protection, VIII. PREA Violations

RELIEF REQUESTED
(Money)

Everstad seeks monetary compensation/damages
in excess of $50,000 from Defendants
in their individual capacities for
emotional pain and suffering, fear and
terror, intentional infliction of extreme
emotional harm, deliberate indifference
toward and reckless endangerment
of Everstad's physical safety, life, and
mental health. Everstad seeks non-money damages/
relief from Defendants in their official
capacities as provided by law, preventing
including, but not limited to, further
retaliation by Defendants.

-10-